UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SALVADOR JIMENEZ, | ) |
| Petitioner, | ) CASE NO. C05-387-RSM |
| v. | ) REPORT AND |
| | ) RECOMMENDATION |
| DOUG WADDINGTON, | ) |
| Respondent. | ) |

I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Salvador Jiminez is a state prisoner currently incarcerated at the Stafford Creek Corrections Center in Aberdeen, Washington. He has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his August, 2002 conviction in Snohomish County Superior Court for second degree assault with a deadly weapon and second degree unlawful possession of a firearm. After careful consideration of the record in its entirety, the Court concludes that no evidentiary hearing is required and recommends that petitioner's federal habeas petition should be DENIED and this action should be dismissed with prejudice..

II. FACTUAL AND PROCEDURAL HISTORY

A. Background Facts

In an unpublished opinion issued on December 15, 2003, the Washington Court of Appeals summarized the facts related to petitioner's conviction as follows:

REPORT AND RECOMMENDATION
Page - 1

Jiminez shot his girlfriend Sherry Bradford in the leg while they were waiting in a parked car for Sherry's sister, Amber. Amber returned to the car and the three drove to the trailer in which they were staying. Another person, Craig Penix, stayed in the trailer that night. The next morning, Jiminez brought Sherry to the hospital.

While Jiminez and Sherry were at the hospital, deputies from the Snohomish County Sheriff's Office arrived to investigate the shooting. During their investigation, the deputies arrested Jiminez for reckless endangerment.

After his arrest, Jiminez made several written and oral statements. He was charged with second degree assault—domestic violence while armed with a firearm. The information was amended before trial to add second degree unlawful possession of a firearm and tampering with a witness. The amended information lists Count 1 as Second Degree Assault (DV) and reads as follows:

> Count 1 - <u>SECOND DEGREE ASSAULT (DV)</u>, committed as follows: That the defendant, on or about the 1st day of March, 2002, did intentionally assault another person, to-wit: Sherry Bradford, and thereby recklessly inflict substantial bodily harm, and did intentionally assault another person, to-wit: Sherry Bradford, with a deadly weapon, to-wit: a gun; proscribed by RCW 9A.36.021(1)(a) and (c), a felony; and that at the time of the commission of the crime, the defendant or an accomplice was armed with a firearm, as provided and defined in RCW 9.9A.510, RCW 9.41.010, and RCW 9.94A.602.

A CrR 3.5 hearing was held to determine the admissibility of Jiminez's post-arrest statements. Argument during the hearing centered on Jiminez's *Miranda*[1] rights. No argument was made regarding probable cause for the arrest. The court ruled that the statements were made knowingly, voluntarily, and intelligently, and that they were admissible.

During deliberation, the jury asked, "Does 1b in instruction 8, mean intentionally assaulted as defined in instruction 6?"

Instruction 8 reads:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

>    (1) That on or about the 1st of March, 2002, the defendant:
>
>    (a) Intentionally assaulted <u>Sherry Bradford</u> and thereby recklessly inflicted substantial bodily harm; or
>
>    (b) Assaulted <u>Sherry Bradford</u> with a deadly weapon; and
>
>    (2) That the acts occurred in the State of Washington.
>
>    If you find from the evidence that element (2) and either element (1)(a) or (1)(b) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. Elements (1)(a) and (1)(b) are alternatives and only one need be proved.
>
>    On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.
>
>    Instruction 6 reads:
>
>    An assault is an intentional touching or striking or shooting of another person, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or shooting is offensive, if the touching or striking or shooting would offend an ordinary person who is not unduly sensitive.
>
>    Before answering the question, the trial judge explained to trial counsel his intended response. Defense counsel replied, "That sounds fine with me, Your Honor." The judge then answered the question by writing, "[t]he word 'intentionally' as set out in 1(a) of instruction 8 is surplusage. Please refer to instruction No. 6 which defines any assault to be an intentional touching or striking or shooting of another person, etc."
>
>    The jury found Jiminez guilty of second degree assault while armed with a firearm and second degree unlawful possession of a firearm. Jiminez received a standard range sentence of 50 months incarceration.

Dkt. #19, Ex. 3.

B.   <u>Procedural History</u>

Petitioner, represented by counsel, appealed his convictions to the Washington Court of Appeals ("court of appeals"), claiming that the trial court : (1) improperly struck the "intent" element from the "to convict" instruction, thereby diluting the state's

REPORT AND RECOMMENDATION
Page - 3

burden of proof and depriving him of a fair trial, and (2) improperly refused to suppress his post-arrest statements even though the police lacked probable cause to arrest him. Dkt. #19, Ex. 4. Petitioner also filed a *pro se* statement of additional grounds for review, wherein he claimed denial of his constitutional right of confrontation, denial of his right to compulsory process, and violation of his due process rights when the trial court instructed the jury on uncharged alternative means of committing the offense. *Id.* at Ex. 5. The court of appeals affirmed petitioner's conviction and sentence in an unpublished opinion on December 15, 2003. *Id.* at Ex. 3. On September 8, 2004, the Supreme Court of Washington denied his petition for review. *Id.* at Ex. 10. The court of appeals issued a mandate on October 13, 2004. *Id.* at Ex. 11.

Petitioner timely filed the present § 2254 habeas petition; respondent filed an answer, along with relevant portions of the state court record; and petitioner's filed a traverse in reply to respondent's answer. This matter is now ripe for review.

### III. GROUNDS FOR REVIEW

Petitioner presents the following five grounds for federal habeas relief:

Ground One: Whether, under the Sixth and Fourteenth Amendments to the United States Constitution, the trial court, by striking an essential element of the charged crime from the "to convict' instruction, relieved the state of its burden of proof and deprived Mr. Jiminez of his right to a fair jury trial.

Ground Two: Whether under the Fourth and Fourteenth Amendments to the United States Constitution, the trial court properly found Mr. Jiminez's custodial statements to the police admissible even though the prosecution failed to prove it had probable cause to arrest Mr. Jiminez.

Ground Three: Whether, under the Sixth Amendment to the United States Constitution, Mr. Jiminez's right of confrontation was violated when he did not face his accuser Sherry Bradford, the alleged victim, at trial and when Sherry Bradford was not shown to be unavailable for trial.

Ground Four: Whether, under the Sixth Amendment to the United States Constitution, Mr. Jiminez was denied his right to compulsory process when the alleged

REPORT AND RECOMMENDATION
Page - 4

victim, Sherry Bradford, and a key material witness, Craig Penix, were not called at trial, but whose testimonies were of significant importance and central to his case.

Ground Five: Whether, under the Fourteenth Amendment to the United States Constitution, Mr. Jiminez received due process when the state tried him for, and the jury was instructed on two alternative theories.

Respondent concedes that petitioner has properly exhausted all his claims within the meaning of 28 U.S.C. § 2254(b).  Dkt. #18 at 5.

## IV.  STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law, or if the state court decides a case differently than the U.S. Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 413.  The Ninth Circuit has interpreted "an unreasonable application of law" to mean application that is "clearly erroneous."  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir.), *cert. denied*, 531 U.S. 944 (2000).

Additionally, if a habeas petitioner challenges the determination of a factual issue by a state court, such determination is presumed correct, and the applicant has the

REPORT AND RECOMMENDATION
Page - 5

burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.  DISCUSSION

A. <u>Instructional Error</u>

Petitioner argues that errors in the trial court's instructions to the jury violated his due process rights under the Fourteenth Amendment.  Respondent contends that petitioner's two jury instruction claims (Claims 1 and 5) are solely state law claims and thus not a basis for habeas relief.

Federal habeas relief is not available for alleged error in interpretation or application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S.C.5. 475, 116 L.Ed.2d 385 (1991).  In order to challenge a jury instruction on habeas, the defendant must prove that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process.'"*Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).  The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole.  *See id.*  The relevant inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction'" in an unconstitutional manner.  *Id. (*quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

1. <u>The "To-Convict" Instruction</u>

In ground one, Petitioner asserts that the trial court improperly diluted the State's burden of proof and deprived him of a fair trial by striking an essential element from instruction 8, the "to-convict" instruction for second degree assault.  Specifically, Petitioner challenges the explanation the trial court gave when the jury asked for

clarification of the "intent" element as it applied to assault with a deadly weapon.[2] He argues that not only did the trial court's response tell the jury to disregard an essential element of the crime, but also, it neither answered the jury's question nor eliminated the confusion over the intent element. Petitioner contends that because the court's failure to clearly explain the governing law may have allowed the jurors to apply the law incorrectly, the incorrect "to-convict" instruction cannot be harmless beyond a reasonable doubt and reversal is required.

In evaluating this claim, the state court of appeals initially applied the invited error doctrine under state law and concluded that petitioner could not challenge the trial judge's answer to the jury question on appeal because the trial court discussed its intentions with trial counsel, and defense counsel agreed to the answer. Dkt. #19, Ex. 3 at 5. Further, the court concluded that even if the invited error doctrine did not apply, it would still not find error in the trial court's instructions. *Id.* The court gave the following reason for this conclusion:

> Here, the jury did not have to search for a missing element, because the intent element was included in the definition of assault. In the trial court's answer to the jury's question, the jury was directed to the correct instruction, effectively incorporating instruction 6 into the to-convict instruction and clearing up any confusion that may have arisen during deliberation.

*Id.*, Ex. 3 at 7.

---

[2]**Jury Inquiry**: Does 1b in instruction 8 mean intentionally assaulted as defined in instruction 6?

**Court's Response**: The word "intentionally" as set out in 1(a) of instruction No. 8 is surplusage. Please refer to instruction No. 6 which defines any assault to be an intentional touch or striking or shooting of another person, etc.

Dkt #17, App. B.

REPORT AND RECOMMENDATION
Page - 7

Taken as a whole, the instructions adequately instructed the jury on the intent element of second degree assault, and thus it is unlikely that the jury would have applied the "to-convict" instruction in an unconstitutional manner. Accordingly, the state court decision is not contrary to nor an unreasonable application of clearly established federal law. The undersigned therefore recommends that petitioner's first ground for habeas relief should be denied.

2.  Instruction on Alternative Theories

In ground five, Petitioner argues that he was denied due process when the state tried him on and the jury was instructed on two alternative theories. Petitioner asserts that "the jury was instructed it could convict Mr. Jiminez either by finding he intentionally assaulted and recklessly inflicted bodily injury, or by finding he assaulted the complainant with a deadly weapon." Dkt. #17 at 24. He appears to argue that because the jury was not instructed that it must unanimously agree as to the theory on which it based his conviction for second degree assault, there is no way to know which theory of conviction was the basis of their verdict.

The state court of appeals analyzed this issue under *State v. Gallo*, 20 Wn. App. 717, 582 P.2d 558 (1978), which provides that "where a single offense may be committed by various means, the jury only need be unanimous as to the guilt of the defendant and not as to the manner in which the offense was committed, provided there is substantial evidence to support each of the means charged." *Id.* at 730 (citing *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976)). The court concluded that the instructions were not confusing.

Although petitioner seeks to couch this claim as a federal issue by asserting that this jury instruction violated his due process right under the Fourteenth Amendment,

REPORT AND RECOMMENDATION
Page - 8

1  merely placing a "due process" label on an alleged violation does not entitle petitioner to
2  federal relief. *Langford v. Day*, 110 F.3d 1380, 1388-89 (1996). Broad, conclusory
3  allegations of unconstitutionality are insufficient to state a cognizable claim. *Jones v.*
4  *Gomez*, 66 F.3d 199, 205 (9th Cir. 1995). Here, it is clear that the issue petitioner
5  presents involves an application of state law. Federal courts accept a state court's
6  interpretation of state law, *see Melugin v. Hames*, 38 F.3d 1478, 1482 (9th Cir. 1994),
7  and alleged errors in the application of state law are not cognizable in a federal habeas
8  corpus. *Middleton v. Cupp*, 786 F.2d 1083, 1085 (9th Cir. 1984), *cert. denied*, 478 U.S.
9  1021 (1986). Accordingly, this Court has no authority to review this issue of state law.

B.  <u>Admissibility of Custodial Statements</u>

In his second ground for relief, Petitioner argues that the trial court's failure to suppress his custodial statements to the police was a constitutional error under the Fourth Amendment, as applied to the States through the Fourteenth Amendment, because the testimony at the suppression hearing indicated that the police lacked probable cause to arrest him. He contends that the trial court erred by failing to consider whether his custodial detention was lawful. Respondent replies that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), bars Petitioner's Fourth Amendment claim.   This Court agrees with Respondent.

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.*, 428 U.S. at 494. The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided. *Ortiz-*

*Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir.), *cert. denied*, 464 U.S. 933, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983)).

As noted by Respondent, a full and fair opportunity to litigate Fourth Amendment claims is provided under Rule 3.6 of the Washington Criminal Rules for Superior Court, which provides for suppression hearings. *See* CrR 3.6. Additionally, the record reflects that on July 17, 2002, the trial court held a pretrial evidentiary hearing under CrR 3.5 (Confession Procedure) regarding the admissibility of petitioner's post-arrest statements. Dkt. 19, Ex. 13 at 17-94. Petitioner does not refute that at the CrR 3.5 hearing he was given, and took advantage of the opportunity to present evidence, cross-examine witnesses, and argue the law. Additionally, this Court notes that at the hearing, petitioner sought to suppress his post-arrest statements on grounds other than the claimed lack of probable cause to arrest that he now presents in his federal habeas petition. However he clearly had the opportunity to raise his current claim if he had chosen to do so. Moreover, petitioner fully presented the lack of probable cause claim in briefing on direct review to the state court of appeals and the state supreme court. The court of appeals ruled that "[a]lthough probable cause is necessary for a valid, warrantless arrest, the State does not need to prove probable cause at a CrR 3.5 hearing unless that issue has been raised by the defendant." Dkt. 19, Ex. 3 at 9. Given these facts, the undersigned concludes that petitioner was provided a full and fair opportunity to litigate his Fourth Amendment claim in pretrial proceedings and on direct review in the state courts. Thus, in light of *Stone v. Powell*, there is no basis for federal habeas relief under Petitioner's second claim.

*//*

REPORT AND RECOMMENDATION
Page - 10

C. <u>Right of Confrontation</u>

Petitioner argues in his third ground for relief that his Sixth Amendment right of confrontation was violated when he did not face his accuser, the alleged victim Sherry Bradford, at trial and the state failed to show her unavailability. He contends that Sherry's sister Amber, who did not witness the incident, testified to the jury what Sherry allegedly told her, that Jiminez shot Sherry. Petitioner argues that "Amber's testimony was purely hearsay and ex-parte in-court testimony." Dkt. #21 at 11. Respondent argues that because petitioner has failed to show that Sherry Bradford's statements were in any way testimonial, he has failed to establish any claim under the Constitution.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. This bedrock procedural guarantee applies to both federal and state prosecutions. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In *Ohio v. Roberts*, 448 U.S. 56 (1980), the United States Supreme Court held that the Confrontation Clause does not bar the admission of an out-of-court statement of an unavailable witness so long as the statement bears "adequate indicia of reliability." *Id.* at 66.

However, in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court partially abrogated *Roberts*. In *Crawford*, the Court drew a distinction between testimonial and non-testimonial hearsay, and rejected the *Roberts* test as to testimonial hearsay statements. As to testimonial hearsay statements, the Court held that such statements are barred under the Confrontation Clause unless the declarant is unavailable and the defendant had prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68-69.

REPORT AND RECOMMENDATION
Page - 11

Thus, in evaluating petitioner's Confirmation Clause claim[3], the first question this Court must address is whether the statements here were "testimonial" and therefore subject to the rule announced in *Crawford*. The Supreme Court did not spell out a comprehensive definition of "testimonial" in *Crawford*, but it did note that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

In the present case, as noted by respondent, petitioner has not shown that Sherry Bradford's statements to her sister Amber were testimonial in nature. The statements were not made at a preliminary hearing, or in a former trial, or during police interrogations. Instead, according to Amber's testimony, Sherry Bradford's statements were made when Amber returned to the car where Sherry and petitioner were waiting, immediately after Amber heard a loud "bang, bang, bang" sound. *See* Dkt. #19, Ex. 14 at 12-14, 32. In light of the circumstances under which Sherry Bradford's statements were made, it is apparent that the statements were not testimonial and therefore, are not governed by *Crawford*.

Because the statements at issue here were non-testimonial, this Court turns to the question of whether the statements were properly admitted under the *Roberts* reliability test which remains applicable to non-testimonial statements. *See Crawford*, 541 U.S. at 68. To meet that test, evidence must either fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." *Id.*

Here, the record reflects that the issue of admissibility of Sherry Bradford's statements to her sister Amber about the shooting, was initially raised in the state's pre-

---

[3] Direct review in petitioner's case occurred prior to the Supreme Court's decision in *Crawford v. Washington.*

trial motions in limine, where the transcript reads as follows:

> MISS KRISTOFF [prosecutor]: Seven to prohibit defense counsel from eliciting testimony from Sherry Bradford that the shooting was accidental. At this point, I am seeking to admit a statement from Sherry to Amber that "He shot me," and I believe she will say Sherry said, "He tried to kill me." This was made immediately after the witness heard the gun shot. Afterwards, the victim changed her story and said that the shooting was accidental. I'm hoping to exclude that as hearsay.
>
> MISS FROST [defense counsel]: And, Your Honor, I think the first statement of "He shot me and that he tried to kill me" the State plans to try to admit under the excited utterance exception to the hearsay rule. My opinion -- or my argument, Your Honor, is that if that statement comes under the excited utterance rule, so does the statement of "It was an accident." These statements both occurred very shortly after the shooting.
>
> In her statement, the witness who would testify to these statements says that the victim was crying, screaming, hysterical, in shock, and both of these statements were apparently made on the -- in the car ride from the time that this shooting occurred until they got home, so I think all of that period was a short period of time, and I think that if either of those statements comes in, they both would have to come in under the excited utterance.
>
> ***
>
> THE COURT: All right. I will allow both statements. It strikes me if it's within a couple of minutes, then accepting that the statements initially made to Amber in the vehicle would qualify as a res gestae or excited utterance statement, it strikes me that statements made at the same time or within a couple minutes, while still under the same color of the event, ought to also be admitted.
>
> I suppose it could be argued that it's not an excited utterance to the extent that she's providing an exculpatory statement, but I think it gets so close to splitting hairs that I would rather err in favor of allowing the statement in, rather than try to make distinctions between what was an excited utterance and what may not have been, given the short time frame during the drive to the home.

Dkt. #19, Ex. 14 at 5-7.

When petitioner raised his Confrontation Clause claim on direct review, the Washington Court of Appeals noted that Sherry Bradford did not testify, but one of her statements was allowed as an excited utterance. Dkt. 19, Ex. 3 at 9. The court of

REPORT AND RECOMMENDATION
Page - 13

appeals concluded that Jiminez's right to confrontation was not violated because an excited utterance is an exception to the hearsay rule and such evidence does not violate the right to confrontation even if the speaker was not declared to be unavailable. *Id.*

"Exited utterance" is a firmly rooted exception to the hearsay rule, and evidence which fits within it also satisfies the requirements of the Sixth Amendment. *White v. Illinois*, 502 U.S. 346, 355 n.8, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992). Thus, the conclusions by the trial court and the court of appeals were entirely reasonable given that Sherry Bradford's statements were made immediately after the incident in which she was shot, while she was still crying, screaming and upset from that incident. See Dkt. 19, Ex. 15 at 14, 32. This Court therefore concludes that the determination of the state courts that Amber's testimony regarding Sherry Bradford's statements was admissible is neither contrary to, nor an unreasonable application of federal law. Accordingly, Petitioner's federal habeas petition should be denied with respect to his third ground for relief.

D.  <u>Right to Compulsory Process</u>

Petitioner argues that he was denied his Sixth Amendment right to compulsory process when the alleged victim, Sherry Bradford and a key material witness, Craig Penix, whose testimonies were central to petitioner's case, were not called to testify at trial.

The Sixth Amendment compulsory process clause "does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him compulsory process for obtaining witnesses *in his favor*." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 509 (9th Cir. 1994) (citing *United Sates v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.3d 1193 (1982)

REPORT AND RECOMMENDATION
Page - 14

(internal quotations omitted, emphasis in original)). Here, Petitioner has made no showing that he was deprived of testimony that would have been "*relevant* and *material* [and] *vital*" to his defense. *Valenzuela-Bernal*, 458 U.S. at 867, 102 S.Ct. at 3446 (emphasis in original). Indeed, the Washington Court of Appeals held that Petitioner had not been deprived of his right to compulsory process because "[w]hen the State did not call Sherry or Penix, Jiminez did not claim surprise, ask for a continuance to subpoena the witnesses, or advise the court by an offer of proof what he intended to prove by them." Dkt. 19, Ex. 3 at 9. Because there is no evidence that Petitioner was in any way barred from exercising his Sixth Amendment compulsory process right, this claim fails. Therefore, petitioner's habeas petition should be denied with respect to his fourth ground for relief.

## VI. CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be denied and this action dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of June, 2006.

MONICA J. BENTON
United States Magistrate Judge